## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OPAL CHABRIER, DONALD LAMUTIS, and STEVEN TURNER, individually and on behalf of all others similarly situated, | : | CIVIL ACTION NO. 06-4176 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WILMINGTON FINANCE, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

AND NOW, this ___ day of _____ 2008, upon consideration of the Motion filed by Defendant Wilmington Finance, Inc. ("WFI") and Plaintiffs' response thereto, if any, WFI's Motion to Apply a Two-Year Statute of Limitations is GRANTED, and it is hereby ORDERED that the Plaintiffs' claims are properly subject to a two-year statute of limitations.

_____
Shapiro, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OPAL CHABRIER, DONALD LAMUTIS, and STEVEN TURNER, individually and on behalf of all others similarly situated, | : | CIVIL ACTION NO. 06-4176 |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WILMINGTON FINANCE, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT SEEKING TO APPLY A TWO-YEAR STATUTE OF LIMITATIONS

Pursuant to Fed. R. Civ. P. 56, Defendant Wilmington Finance, Inc. ("WFI") hereby moves for partial summary judgment on Plaintiffs' claims under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"). Specifically, WFI seeks an order limiting Plaintiffs' claims to the FLSA's two-year statute of limitations. In support of its Motion, WFI incorporates the arguments set forth in the accompanying Memorandum, and states as follows:

1.      This lawsuit is a purported collective action under the FLSA. Named Plaintiffs Opal Chabrier, Donald Lamutis and Steven Turner, former retail loan officers ("RLOs") in Defendant WFI's Cincinnati, Ohio office, allege that WFI subjected them and all other RLOs to a single, uniform policy which required RLOs to work more than 40 hours per week, but prohibited them from reporting overtime hours. *(See* Pl. Motion for Notice, D.E. 23).

2.      Certain Plaintiffs, namely, Thomas Bain, Dion Bryant, Brandy Cornett, Tonya Curnett, Jerry Herskowitz, Dustin Malcolm, Frank McKeon, Christopher Osbourne, Samuel Porter, Donald Raugh, Joseph Ries, Mike Trame, and Nicholas Williams seek to apply the FLSA's three-year statute of limitations – which is applicable only to willful violations -- to their claims.  The remaining 33 Plaintiffs do not seek a three-year statute of limitations because the third year does not impact, or otherwise affect, the validity or value of their FLSA claims.

3.      Based on the record evidence, Plaintiffs are not entitled to the FLSA's three-year statute of limitations for willful violations.  It is undisputed that, at all relevant times, WFI had policies in place that prohibited employees from working off the clock or falsifying time records.  Each Plaintiff signed an acknowledgement that they knew of these policies.

4.      Moreover, Plaintiffs adduced no evidence that WFI knew of the alleged FLSA violations.  In fact, RLOs testified that no member of WFI's corporate management team knew that they were working off the clock.  Thus, Plaintiffs cannot show a corporate initiative for RLOs to work off the clock.

5.      In the end, even construing the record evidence in the light most favorable to Plaintiffs, Plaintiffs' evidence of willfulness consists primarily of allegations that rogue middle managers allegedly instructed some Plaintiffs to work off the clock or turned a blind eye to it.  Such a showing is insufficient to permit Plaintiffs to seek damages for a three-year statute of limitations.  Indeed, the Third Circuit explicitly rejected a finding of a willful FLSA violation in a case with nearly identical facts.

6.    In sum, no reasonable juror could conclude that WFI willfully violated the FLSA.  Plaintiffs simply cannot show that WFI either knew or showed *reckless disregard* for whether the FLSA prohibited the alleged offending conduct.  As a result, the FLSA's two-year statute of limitations (applicable to non-willful violations) applies to the case.

**WHEREFORE**, for all the foregoing reasons, and those contained in the accompanying Memorandum, this Court should grant WFI's Motion and dismiss Plaintiffs' claims to the extent they exceed the FLSA's two-year statute of limitations.

Respectfully submitted,

WILMINGTON FINANCE, INC.

By:  /s/ James N. Boudreau
     James N. Boudreau (ID No. 77891)
     Michele Halgas Malloy (ID No. 88456)
     **Littler Mendelson, P.C.**
     Three Parkway
     1601 Cherry Street, Suite 1400
     Philadelphia, PA  19102

Dated:  February 29, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OPAL CHABRIER, DONALD LAMUTIS, and STEVEN TURNER, individually and on behalf of all others similarly situated, | : : : : : | CIVIL ACTION NO. 06-4176 |
| Plaintiffs, | : : | |
| v. | : : | |
| WILMINGTON FINANCE, INC., | : : | |
| Defendant. | : : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT SEEKING
TO APPLY A TWO-YEAR STATUTE OF LIMITATIONS**

I.    **INTRODUCTION**

This lawsuit is a purported collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA").  Named Plaintiffs, Opal Chabrier, Donald Lamutis and Steven Turner, are all former retail loan officers ("RLOs") in Defendant Wilmington Finance, Inc.'s ("WFI") Cincinnati, Ohio office.  They allege that WFI subjected them and all other RLOs to a single, uniform policy which required RLOs to work more than 40 hours per week, but prohibited them from reporting overtime hours.  (*See* Pl. Motion for Notice, D.E. 23).

Plaintiffs seek the application of the three-year statute of limitations, rather than the two-year statute of limitations, on the grounds that WFI's purported violation of the FLSA was willful.[1]  In support of this position, Plaintiffs allege: 1) their supervisors told

_____

[1] The following Plaintiffs seek the application of the three-year statute of limitations: Thomas Bain, Dion Bryant, Brandy Cornett, Tonya Curnett, Jerry Herskowitz, Dustin Malcolm, Frank

them not to report hours in excess of 40 per week; 2) their supervisors changed timesheets that reported more than 40 hours in a week; 3) their supervisors implied that employees should work off the clock; 4) their supervisors told them to work through lunch; and 5) their supervisors knew that Plaintiffs worked off the clock, even if not at the supervisor's instruction.[2]

Even viewing the record evidence in the light most favorable to Plaintiffs, Plaintiffs fall far short of proffering evidence sufficient to meet the willfulness standard. Plaintiffs simply cannot show that WFI either knew or showed *reckless disregard* for whether the FLSA prohibited its conduct. As an initial matter, WFI had policies in place that prohibited employees from working off the clock or falsifying time records. Each Plaintiff signed an acknowledgement that they knew of, and had read, these policies. Further, Plaintiffs have not adduced evidence that WFI knew of the alleged FLSA violations. To the contrary, RLOs testified that no member of WFI's corporate management knew that they were working off the clock. Some RLOs even conceded that their own direct supervisors had no knowledge of their off the clock work. Rather than show a corporate initiative for RLOs to work off the clock, Plaintiffs' allegations at most demonstrate that rogue middle managers supposedly instructed them to work off the clock. Such a showing is legally insufficient. It neither justifies nor warrants application of a three-year statute of limitations. Accordingly, this Court should limit Plaintiffs' claims to the two-year statute of limitations.

---

McKeon, Christopher Osbourne, Samuel Porter, Donald Raugh, Joseph Ries, Mike Trame, and Nicholas Williams.

[2] The Plaintiffs' allegations regarding supervisory knowledge varies from Plaintiff to Plaintiff with some Plaintiffs testifying that their supervisors did not know about their off the clock work.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    WFI's Business and Organizational Structure

WFI is a residential mortgage lender headquartered in Plymouth Meeting, Pennsylvania. From October 4, 2004 through its closure on March 12, 2007, WFI operated an office in Cincinnati, Ohio. (Lewinski Dep., Ex. 1, p. 102). To comprehend fully the individualized nature of each RLO's overtime claim, it is necessary to understand the structure of WFI's Ohio retail loan operation.

A Regional Director of Sales managed the office's day-to-day activities.[3] Initially, Timothy Gallagher was the Regional Director of Sales in Ohio. (Stamos Dep., Ex. 2, p. 59-60). In June 2006, Mr. Gallagher left WFI.[4] In August 2006, WFI appointed Paul Banninger the Regional Director of Sales for the Ohio office. (Gallagher Dep., Ex. 3, p. 51; Lewinski Dep., Ex. 1, p. 163). Unlike Mr. Gallagher, Mr. Banninger did not work in Ohio. Instead, he worked in WFI's Pennsylvania office and occasionally traveled to Ohio. (Banninger Dep., Ex. 4, pp. 179-180).

Reporting to the Regional Director of Sales was Branch Manager Daniel Lewinski. In January 2006, Mr. Lewinski took on additional responsibilities due to Mr. Gallagher's leave of absence. In April 2006, Mr. Lewinski himself went on leave and WFI asked Jeffrey McDonald to oversee the day-to-day operations of the office. After Mr. Gallagher left WFI in June 2006, Mr. Lewinski managed the Ohio operations until the office closed in March 2007. (Lewinski Dep., Ex. 1, pp. 163-64).

---

[3] The Regional Director of Sales reported to James Stamos, head of WFI's entire retail operation. Mr. Stamos worked in Plymouth Meeting, Pennsylvania. He visited the Cincinnati office about once per quarter for one to two days. Other than when he was on site, Mr. Stamos generally had no contact with RLOs in the Ohio office. (Stamos Dep., Ex. 2, pp. 75-76).

[4] In the last six to eight months of his employment, Mr. Gallagher was in the office only sporadically due to health-related issues.

3

Two Sales Managers reported to Mr. Lewinski:  Tom Conway and Mr. McDonald.[5]  Sales Managers monitored RLO production and assisted RLOs and Team Leads in closing loans.  (Stamos Dep., Ex. 2, p. 90).  Team Leads reported to the Sales Managers and managed a "team" of RLOs.[6]  WFI employed three to four Team Leads in the Ohio office at any given time.  Team Leads were responsible for, among other administrative tasks, monitoring and verifying the hours worked by RLOs on their team.  (Lewinski Dep., Ex. 1, p. 97).  They were to review and collect RLO timesheets, verify the hours reported on them and submit them to the Regional Director of Sales for submission to WFI's corporate payroll department.  (Lewinski Dep., Ex. 1, p. 96).  If a RLO was close to exceeding 40 hours in a week, the Team Lead was to instruct the RLO to leave early on Friday.  (Lewinski Dep., Ex. 1, p. 116).

## B.     WFI's Time Record Policies

WFI's policy is to maintain accurate records of hours worked by employees in order to calculate employee pay and benefits.  (Attendance Records Policy, Ex. 6, ("Accurately recording time worked is the responsibility of every Associate.")).  WFI prohibits employees from altering, falsifying or tampering with attendance records.  (Attendance Records Policy, Ex. 6).  Employees engaging in such conduct are subject to disciplinary action, up to and including termination of employment.  (Attendance Records Policy, Ex. 6).

WFI also maintains a separate Overtime Pay Policy.  This policy states, in part:

> For purposes of overtime compensation, all hours worked in
> excess of 40 hours during any work week will be paid at one
> and one-half times the regular hourly rate of pay for all full-

---

[5] In March 2006, WFI demoted Mr. Conway to a Team Lead position.  (Conway Dep., Ex. 5, p. 136).

[6] In contrast to RLOs, Team Leads were exempt employees.

4

> time or part-time non-exempt employees (except in states
> that mandate overtime pay over eight (8) hours in one day).

(Overtime Pay Policy, revised December 2005, Ex. 7).[7]

WFI's Overtime Pay Policy for hourly employees strictly prohibits off the clock work. It is WFI's clear and uniform policy to pay all hourly employees for all time worked. (Attendance Records policy, Ex. 6; Overtime Pay Policy, Ex. 7). There are no exceptions to WFI's prohibition of off the clock work or the Company's mandate that non-exempt employees must record all time worked and be paid for such time. WFI communicates this policy to its hourly employees during employee orientation (New Employee Program, Ex. 8; Lewinski Dep., Ex. 1, pp. 76, 86), through its Employee Manual (*See* Handbook Acknowledgement, Ex. 9), and via the time recording process by which employees verify their recorded weekly work hours. (Attendance Records Policy, Ex. 6).

### C.    RLO 40-Hour Workweek

WFI's management expressly told RLOs that the position was a full-time, 40 hour per week job. (Lewinski Dep., Ex. 1, pp. 76, 86; Stamos Dep., Ex. 2, pp. 55, 64). Although work schedules varied among RLOs, and included some nights and occasional Saturdays, WFI did not schedule RLOs to work more than 40 hours per week, with the exception of occasional weeks where WFI held mandatory training. (Lewinski Dep., Ex. 1, pp. 76, 86; Banninger Dep., Ex. 4, pp. 97-98). In Ohio, the Regional Director of Sales set the work schedule. As a general rule, each loan officer's availability, lead source and team assignment determined that RLO's weekly schedule, but all RLOs were to work two

---

[7] WFI had a similar Overtime Pay policy in effect prior to 2005. (*See* Overtime Pay Policies, dated 2002 and 2003, Ex. 36).

late nights a week.  (Stamos Dep., Ex. 2, p. 66; Lewinski Dep., Ex. 1, p. 76; Banninger Dep., Ex. 4, p. 114).  The purpose of such staggered work hours was to ensure that RLOs were in the office at times most likely to reach consumers.  (*i.e.,* Tuesday through Thursday, between 5:00 and 7:00 p.m.).

**D.     How RLOs Recorded the Time They Worked**

**1.      RLOs Recorded Their Work Hours on Timesheets**

From October 2004 through March 2006, RLOs reported their hours worked on paper timesheets available on WFI's intranet.  (Gallagher Dep., Ex. 3, p. 97; Attendance Records Policy, Ex. 6).  Team Leads collected the completed timesheets and delivered them to the Regional Director of Sales.  (Conway Dep., Ex. 5, p. 178; McDonald Dep., Ex. 10, p. 48; Gallagher Dep., Ex. 3, p. 97;  Lewinski Dep., Ex. 1, p. 112-13; Herskowitz Dep., Ex. 11, p. 91-92).  Some Plaintiffs filled out their timesheets on a monthly basis (Ries Dep., Ex. 12, p. 70; Wahoff Dep., Ex. 13, pp. 108-11; Rosenberger Dep., Ex. 14, p. 26); others completed their timesheets on a weekly basis (Crumes Dep., Ex. 15, p. 66; Durant Dep., Ex. 16, p. 40); a few claim that they filled out their timesheets weekly and at other times monthly (Plank Dep., Ex. 17, p. 50; Moon Dep., Ex. 18, p. 108).  Still other Plaintiffs said they merely signed timesheets that were already filled out.  (Miracle Dep., Ex. 19, pp. 132-33; Read Dep., Ex. 20, pp. 135-36).

Not only do Plaintiffs' stories differ on the frequency of completing timesheets, they also vary on what they recorded.  Some Plaintiffs claim that they just recorded their scheduled work hours.  (Williams Dep., Ex. 21, p. 45; Ries Dep., Ex. 12, pp. 70-71).  Other Plaintiffs claim they recorded all hours worked, including overtime hours.  (Chabrier Dep., Ex. 22, p. 58; Crumes Dep., Ex. 15, pp. 97, 153).  Other Plaintiffs claim that they would not record their actual time worked but submit a "creative" timesheet,

6

always making sure not to record more than 40 hours per week.  (Trame Dep., Ex. 23, pp. 90-94; Begley Dep., Ex. 24, p. 28).

### 2.    The Kronos Time Keeping System

Beginning in April 2006, RLOs no longer used paper timesheets to record hours worked and attendance.  Instead, WFI implemented a well-known desktop computerized time tracking system, known as Kronos.  (Attendance Records policy, Ex. 6).  RLOs recorded both their time worked and time off by signing into the password prompted system on their desktop computer upon arriving at work.  Kronos time stamped RLOs' arrival and departure times, including lunch or other breaks, based on RLO prompting.[8] (Kronos materials, Ex. 25).  RLOs approved their weekly hours worked each week on the following Monday through email prompts the Kronos system generated.  (Kronos materials, Ex. 25).   If RLOs failed to record their hours (*e.g.*, they forgot to record their start or stop time contemporaneously), they could not correct such entries.  (Lewinski Dep., Ex. 1, p. 140).  As a result, WFI management occasionally had to correct RLO time entries.  (Lewinski Dep., Ex. 1, pp. 135-36).  WFI's policy, however, was that management could make corrections on RLOs' Kronos records only at the RLO's request.  (Lewinski Dep., Ex. 1, pp. 122-26).  Indeed, the Kronos system maintained an audit trail of any change made to a RLO's entry, and informed the RLO via email of any change to their time record.

---

[8] Kronos worked like a physical time clock.  RLOs had to sign in to the Kronos system and "punch" a button whenever they started or stopped working (including lunch breaks).  This was to occur when they started and stopped work shifts, as opposed to completing a paper timesheet, where an RLO could enter the start and stop times after the fact.

### E.  WFI Was Not Aware of Plaintiffs' Allegations of Off the Clock Work

Although stark disparities exist among Plaintiffs' accounts regarding whether WFI management knew of Plaintiffs' alleged off the clock work, Plaintiffs agree that WFI's corporate management did not have such knowledge.  In fact, most Plaintiffs admit that they did not tell their managers or Team Leads the number of hours they worked.  As one Plaintiff explained, everyone complained about their hours, but there was "nothing specific" said to Team Leads or Managers. [9]   (Gray Dep., Ex. 29, p. 48).

Additionally, several Plaintiffs do not believe that their managers knew of their off the clock work and, in fact, tried to prevent such work. [10]  Plaintiffs also disagree as to

_____

[9] Plaintiffs' accounts contrast with testimony from WFI's Ohio management.  Mr. McDonald testified that on Fridays "[m]ost of the people were at their 40 so they had to leave early in the day." (McDonald, Ex. 10, p. 149).  Mr. Conway testified that "I told people, I said you got to do it in 40.  I had a guy named Trevor Read, who's on your list, interrupt me during a team meeting and said, Tom, what if I can't do my job in 40 hours.  This is what I told him:  I said, you and I have to get together and let us try to figure out your schedule, **but ultimately if you cannot do it in 40 hours here, this is not going to work for you.  You should go find another job then.**" (Conway, Ex. 5, pp. 129-30) (emphasis added).  In fact, one Plaintiff recounted at least one instance when Mr. Conway told him to leave the office because he had reached 40 hours. (Shook, Ex. 26, p. 140).  Further, Team Leads testified that they did not alter Plaintiffs' recorded hours to reduce overtime hours. (Osborne Dep., Ex. 27, pp. 167-68 ("I know in KRONOS sometimes I would get a timecard at the end of the week and they were at 42, 43 hours.  I would say something to them, you need to make sure you're at 40 hours.  I would go ahead and I would approve that timecard because I felt I wasn't going to – I thought that would be wrong if I went in and changed their timecard to something they didn't work."); Porter Dep., Ex. 28, pp. 163-64 ("So to answer have I ever changed Kronos it would have been for a lunch or . . . maybe they had a vacation and didn't code it right, so I had to change Kronos.")).

[10] Several Plaintiffs admitted that no manager or Team Lead ever directed them to work off the clock. (*See, e.g.*, Gray Dep., Ex. 29, p. 84, Mulch Dep., Ex. 30, pp. 61-62; Begley Dep., Ex. 24, p. 96; Uhl Dep., Ex. 31, p. 48).  Some Plaintiffs confirmed that management told them not to work more than 40 hours per week. (Hardy Dep., Ex. 32, pp. 63-64).  At least two Plaintiffs remembered that managers pushed them "out the door" on Fridays if they had already achieved 40 work hours in the week. (Barone Dep., Ex. 33, p. 98; Shook Dep., Ex. 26, pp. 140-41).  Almost all Plaintiffs conceded that they never complained to their managers about alleged overtime hours worked. (*See, e.g.*, Mulch Dep., Ex. 30, pp. 85, 88; Gray Dep., Ex. 29, pp. 88-89; Durant Dep., Ex. 16, pp. 88-89).

what information their managers and Team Leads gave them regarding WFI's overtime
policies:

- One Plaintiff claimed that Mr. Conway advised her that WFI paid
  overtime to employees, but that there was a strong preference against
  RLOs working overtime.  (Hardy Dep., Ex. 32, pp. 65-66, 69).

- Another Plaintiff asserted that certain managers implied that RLOs
  would not receive overtime pay.  (Moon Dep., Ex. 18, p. 121).

- Yet another Plaintiff alleged that Mr. Osborne and Mr. Conway told him
  that he would not receive overtime, even if he recorded it.  (Read Dep.,
  Ex. 20, pp. 108-09).

## III.   ARGUMENT

### A.   Plaintiffs Have Failed to Adduce Sufficient Evidence of Willfulness to Justify Applying the FLSA's Three-Year Statute of Limitations.

The FLSA requires that any private civil claimant file suit within two years after

the cause of action accrued.  In the event the alleged violation is "willful," however, the

FLSA expands the statute of limitations to three years.  29 U.S.C. § 255.  An employer

has not committed a willful violation unless it "knew or showed reckless disregard for the

matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richmond*

*Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988).  Explaining

the willfulness standard, the United States Supreme Court noted that "[i]n common

usage, the word 'willful' is considered synonymous with such words as '***voluntary***,'

'***deliberate***,' and '***intentional***.' . . . it is generally understood to refer to conduct that is

not merely negligent." *Id.* (cit. omitted) (emphasis added).

It is Plaintiffs' burden to prove a willful violation of the FLSA.  *Reyes v. Texas*

*Ezpawn, L.P.*, 459 F. Supp. 2d 546, 565 (S.D. Tex. 2006).  If Plaintiffs do not do so, then

the claims are properly subject to the period two years from their respective opt-in dates.

Notably, courts are generally reluctant to find a knowing violation of the FLSA. *See Fabela v. AT&T Communications Corp.*, 2007 WL 3310714, at \*2 (W.D. Tex. Oct. 30, 2007) (citing *Tum v. Barber Foods, Inc.*, 2002 WL 89399 (D. Me. 2002), *aff'd*, 331 F.3d 1 (1st Cir. 2003), *reaff'd*, 360 F.3d 274 (1st Cir. 2004), *aff'd in part and rev'd in part on other grounds sub nom., IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005)). Indeed, courts have held that "[a]n employer does not act willfully even if it acts unreasonably in determining whether it is in compliance with the FLSA." *Fabela,* 2007 WL 3310714, at \*2; *see also Richmond Shoe*, 486 U.S. at 135 n. 13 (clarifying that under the standard announced in the opinion, an employer acting unreasonably, but not recklessly, does not willfully violate the FLSA). Here, too, the facts do not support this Court finding that WFI willfully violated the FLSA.

The undisputed evidence demonstrates that WFI was aware of its FLSA obligations and took steps to comply with them. WFI proactively promulgated and distributed an Attendance Policy and Overtime Policy. The Attendance Policy expressly precluded employees from altering, falsifying or tampering with attendance records. As such, WFI intended for this policy to preclude managers from altering employees' time and to preclude employees from underreporting their hours. Similarly, WFI's Overtime Policy clearly indicated that it was WFI's uniform policy to pay all hourly employees for all time worked. WFI intended for this policy to preclude any off the clock work. Further, in April 2006, WFI switched its attendance tracking system from a paper system to an electronic system, which provided even greater accuracy in recording employees' work hours.

Not only do WFI's policies and efforts demonstrate its commitment to enforcing the FLSA and its regulations, but they also contradict Plaintiffs' allegations that WFI willfully violated the FLSA. Courts have refused to find a willful violation of the FLSA where the defendant company engaged in much less proactive measures:

- Where company failed to seek legal advice, *Richmond Shoe*, 486 U.S. at 134-35;

- The defendant acted upon erroneous legal advice, *Hilbert v. District of Columbia*, 784 F. Supp. 922, 925 (D.D.C. 1992), *rev'd on other grounds*, *Hilbert v. District of Columbia, a Mun. Corp.*, 23 F.3d 429 (D.C. Cir. 1994) ("Although the District ultimately acted on the basis of an erroneous legal interpretation, it did not thwart settled law or recklessly disregard pertinent legal questions.");

- The company did not "thwart any settled FLSA doctrine," *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 703 (3d Cir. 1994);

- The company discussed minimum wage requirements with the state employment commission and had reviewed some "brochures and pamphlets" on the topic. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990);

- The defendant "did not act with subjective good faith and objective reasonableness," *Lockwood v. Prince George's County, Maryland*, 58 F. Supp. 2d 651, 658 (D. Md. 1999) (even though the county presented no evidence as to whether it reconciled its policy with the DOL's rulings enacted in the early 1990s, there was still no willful violation of the FLSA).

WFI certainly acted in good faith when it promulgated and distributed its policies. WFI's actions in switching to an electronic time and attendance system further evidence good faith to comply with the FLSA. There is a complete absence of "reckless disregard," and Plaintiffs have offered no proof of such disregard. Accordingly, no reasonable juror could conclude that WFI willfully violated the FLSA, and this Court should limit Plaintiffs Bain, Bryant, Curnett, Herskowitz, Malcolm, McKeon, Osbourne, Porter, Ries, and Williams' claims to a two-year statute of limitations.

11

**B.      WFI Had No Knowledge of Any Alleged FLSA Violations.**

Furthermore, the undisputed evidence also demonstrates that WFI's corporate management had no knowledge of any alleged off the clock work or other alleged FLSA violations.[11] Indeed, Plaintiff Michael Trame indicated that if WFI's Human Resources had known of Plaintiffs' alleged off the clock work, it would have remedied the situation:

> Q.      Did you ever have a concern that if word got out to corporate Wilmington Finance or to human resources, that loan officers were working hours off the clock, that there may be an end to that?
>
> A.      Was I concerned? No. Do I believe if human resources – I believe that if corporate salespeople, Paul Banninger, Jim Stamos, Karen Sharp, to name a few, found out that we were working overtime, it would have been in one ear and out the other. If human resources would have found, I believe they would have had a problem with it.
>
> ****
>
> Q.      If human resources knew that you were working hours and not reporting them, do you think they would have done something about that?
>
> A.      Yes.

(Trame Dep., Ex. 23, pp. 250, 254).

Although some Plaintiffs allege that their supervisors and middle managers knew of the off the clock work, WFI's managers deny any knowledge of such work.[12] Furthermore, Plaintiffs are inconsistent as to the degree of WFI's alleged knowledge. Some Plaintiffs testified that their Team Lead or Sales Manager specifically directed

---

[11] Not only does such evidence negate a finding of willfulness by WFI, it also supports a finding of no liability under the FLSA. *See Newton v. City of Henderson*, 47 F.3d 746, 748-50 (5th Cir. 1995) ("It is well settled that an employer is not liable under the FLSA for overtime work of which it has no knowledge or was not reasonably aware.").

[12] *See, e.g.*, McDonald Dep., Ex. 10, p. 150.

them to work off the clock.[13]   Others allege that they themselves may have inferred from

statements their Team Lead and/or Sales Manager allegedly made that they should work

off the clock.[14]

Even accepting Plaintiffs' varied allegations of knowledge, Plaintiffs have still

not proffered enough evidence to prove WFI acted with reckless disregard.  Indeed,

Plaintiffs allegations are similar to those asserted in *Reich v. Gateway Press, Inc.* where

the court found no willful violation of the FLSA.  13 F.3d at 703.  In *Reich*, some

newspaper employees testified that their managing editor told them not to record more

than forty hours on their time slips.  *Id.* at 702.  In fact, the employees testified that if

they recorded more than forty hours, "they were reprimanded and instructed to revise

their time slips so that they reflected only forty hours worked."  *Id.*  Further, plaintiffs

presented evidence that an editor threatened to fire a report if he did not revise his time

slip.  *Id.*

Reviewing this evidence, the Third Circuit agreed with the district court's finding

that many employees filled out their time slips inaccurately without prompting.  *Id.*

Thus, the additional hours "were not solely due to [the employer's] directives."  *Id.*  The

Third Circuit held that "[i]t would be unfair to use evidence that mainly indicates that the

[employer's] reporters were committed to their jobs as proof of [the employer's] willful

violation of the FLSA."  *Id.*

---

[13] *See, e.g.*, Crumes Dep., Ex. 15, pp. 66-67; Harper Dep., Ex. 34, p. 41; Begley Dep., Ex. 24, p. 98.
[14] *See, e.g.*, Rosenberger Dep., Ex. 14, pp. 54-55; Morano Dep., Ex. 35, p. 33.  Significantly, there are Plaintiffs whose testimony supports a finding that Ohio managers did not know of the off the clock work. (*See, e.g.,* Mulch Dep., Ex. 30, p. 85; Shook Dep., Ex. 26, pp. 140-41; Crumes Dep., Ex. 15, p. 117; Barone Dep., Ex. 33, p. 98).  A number of Plaintiffs admit that no one, including WFI managers, can confirm they even worked off the clock. (Mulch Dep., Ex. 30, p. 85; Durant Dep., Ex. 16, p. 88).

13

Here, too, some Plaintiffs testified that they purposely underreported their hours because they wanted to make greater commissions or to make production goals. Further, despite testimony regarding direction to alter time slips, there is ample evidence that corporate management did not know of any alterations or off the clock work and that some employees made the decisions to incorrectly record their time without prompting.[15] Accordingly, based on the record evidence, no reasonable juror could conclude that WFI willfully violated the FLSA. WFI is therefore legally entitled to partial summary judgment on Plaintiffs' claims, limiting those claims to two, as opposed to three, years.

## IV.    CONCLUSION

For all the foregoing reasons, this Court should grant WFI's Motion and apply a two-year statute of limitations to the claims of Plaintiffs Bain, Bryant, Cornett, Curnett, Herskowitz, Malcolm, McKeon, Osbourne, Porter, Raugh, Ries, Trame, and Williams.

Respectfully submitted,

WILMINGTON FINANCE, INC.

By:  /s/ James N. Boudreau
     James N. Boudreau (ID No. 77891)
     Michele Halgas Malloy (ID No. 88456)
     **Littler Mendelson, P.C.**
     Three Parkway
     1601 Cherry Street, Suite 1400
     Philadelphia, PA  19102

---

[15] Indeed, the varied accounts of Plaintiffs regarding recording of time and off the clock work highlighted the complete absence of an effort by WFI to violate the FLSA.

## CERTIFICATE OF SERVICE

I, James N. Boudreau, hereby certify that I caused a true and correct copy of the foregoing *Defendant Wilmington Finance, Inc.'s Motion and Memorandum of Law to Limit the Statute of Limitations* to be served electronically and via U.S. Mail on February 29, 2008 upon the following:

> Jonathan D. Berger, Esquire (*via* electronic filing)
> Russell D. Henkin, Esquire (*via* electronic filing)
> Shanon J. Carson, Esquire (*via* electronic filing)
> Berger & Montague
> 1622 Locust Street
> Philadelphia, PA 19103
>
> Daniel K. Touhy, Esquire (*via* U.S. Mail)
> Touhy & Touhy, Ltd.
> 161 North Clark Street
> Suite 2210
> Chicago, IL 60601
>
> Danny Cevallos, Esquire (*via* electronic filing)
> Law Offices of Daniel L. Cevallos, P.C.
> 1420 Locust Street, Suite 24Q
> Philadelphia, PA 19102

> /s/ James N. Boudreau
> James N. Boudreau

Dated:  February 29, 2008